IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>JONATHAN W. ARRINGTON, MICHAEL B. KRATVILLE, and MICHAEL J. WELKE,<br><br>     Defendants. | 8:13CR146<br><br>MEMORANDUM AND ORDER |

  This matter is before the court on defendant Michael Welke's objection, Filing No. 59, to the findings and recommendation ("F&R"), of the magistrate judge, Filing No. 58, on defendant's motion to dismiss, Filing No. 28. The defendants are charged with conspiracy, mail fraud, wire fraud, and aiding and abetting for allegedly planning and perpetrating an investment scheme with intent to defraud, using mail and wire communications.

**I. FACTS**

  The court accepts the facts set out in the F&R and they need not be repeated here, except to the extent necessary to this court's findings. *See* Filing No. 58, F&R at 2-3. The indictment, filed on April 16, 2013, alleges a conspiracy to defraud beginning in July 2005 that continued until approximately December 31, 2008. Filing No. 1, Indictment at 3. As part of the scheme to defraud, the defendants established corporations and entities known as Elite Management Holdings Corp. (EMHC), MJM Enterprises, LLC (MJM), and later NIC, LLC, to obtain money from investors by false and fraudulent pretenses. *Id.* at 2-4. These entities, together with companion limited partnerships, Elite Aggressive Growth Group, LP, EMIF, LP, and Elite Index Investment

Group LP (EIIG) (hereinafter, collectively, "Elite"), provided vehicles whereby individuals could invest in commodities, precious metals and currency markets. *Id.* at 1-2. The indictment charges that as part of the conspiracy the defendants induced approximately 100 investors to invest approximately four million dollars with Elite/NIC. *Id.* at 6.

The indictment describes specific acts committed by each defendant, including Mr. Welke, in furtherance of the alleged conspiracy. *See id.* at 4-13. The latest overt act is an alleged communication from co-conspirator Michael Kratville to a friend asking to obtain signature cards listing Mr. Kratville as an executive of Elite/NC in late 2008. *Id.* at 13. The latest overt act alleged in the indictment to have been taken by defendant Welke is a letter of resignation purporting to resign from the above entities that was allegedly signed in August 2007, but was backdated to August 2006. *Id.*

The indictment was filed on April 16, 2013. The statute of limitations for the crimes charged in the indictment is five years. 18 U.S.C. § 3282(a). The record shows that on December 14, 2010, the United States made an *ex parte* application to suspend the running of the statute of limitations pursuant to 18 U.S.C. § 3292. *See* Misc. No. 8:10MC111, Filing No. 1. The application was accompanied by the Declaration of United States Postal Inspector Paul Beekhuizen (Beekhuizen Decl.) and several exhibits. *Id.*, Filing No. 2, Ex. A, Beekhuizen Decl., Exs. B-F. One of the exhibits is a letter from a senior trial attorney at the Department of Justice, Criminal Division, Office of International Affairs requesting the assistance of the Attorney General of Bermuda in connection with an investigation. *Id.*, Ex. D. The letter states:

> The United States Attorney for the District of Nebraska is investigating Fred Honea (Honea), Carmen De Liniers (De Liniers), Ronald Basset (Basset), Jonathan Arrington (Arrington), Michael Kratville (Kratville), Michael "Red" Welke (Welke), FX investment Group (FXIG),

2

> Elite Management Holdings Corp., Elite Management Investment Fund, LP (EMIF, LP), Elite Index Investment Group, LP, and others who are suspected of soliciting funds from victim investors for investments into FXIG, and then, laundering the funds into accounts outside the United States, including Bermuda. The prosecutor needs bank records from Bermuda Commercial Bank Limited (BCB) to determine whether investors' funds were ever deposited into an account there, and if so, the disposition of those funds. The records also are needed to assist in identifying other potential victims.

*Id.*, Ex. D (sealed). The magistrate judge granted the motion and entered an order suspending the limitations period. *Id.*, Filing No. 3, Order.

The magistrate judge held an evidentiary hearing on August 13, 2013. Filing No. 47, Transcript ("Tr."). At the hearing, Inspector Beekhuizen testified that in late 2009 he began investigating certain transactions relating to a possible investment fraud scheme. *Id.* at 4. He thereafter learned the Nebraska Department of Banking and Finance had also conducted an investigation of the matter. *Id.* at 5. The Nebraska Department of Banking and Finance provided investigative records to Beekhuizen. *Id.* at 5-6. He later received documentation from the Commodities Futures Trading Commission ("CFTC"), who are also conducting an investigation. *Id.* at 6, 8. He testified that he interfaced with the CFTC on the investigation. *Id.* at 9. A grand jury was impaneled at that time. *Id.* at 7.

In early 2010, he sought and obtained various grand jury subpoenas. *Id.* at 6. He testified that the account records of the entities controlled by defendants Arrington, Kratville and Welke showed wire transfers to foreign countries, specifically Spain, Australia, Bermuda and Belize. *Id.* at 9-10. In the spring of 2010, he began efforts to retrieve records from the foreign countries. *Id.* at 10. He sought the assistance of the Department of Justice in preparing requests to the foreign countries for bank and

3

trading account records. *Id.* at 10-11. Various letter requests to the foreign countries were received in evidence at the hearing.[1] *See* Hearing Exs. 3, 5, 8-17. Inspector Beekhuizen testified he later received documents from Spain, Australia, the British Virgin Islands and Bermuda, but no records were ever received from Belize. Filing No. 47, transcript at 18-33.

Welke's motion to dismiss the complaint is premised on the statute of limitations. He argues that defendant Kratville's 2008 acts were not acts in furtherance of the conspiracy. Also, he asserts that he withdrew from the conspiracy in August of 2007. Further, he contends that the statute of limitations was not properly extended under 18 U.S.C. § 3292, arguing that the prosecution of the offense does not depend on evidence from a foreign jurisdiction, there has been no showing of diligence by the prosecution, the application lacked a specific recitation of crimes under investigation, no final action by the foreign countries was alleged in the indictment. He asserts the § 3292 application does not show by a preponderance of evidence that an official request had been made, and that it reasonably appeared, at the time the request was made, that the evidence was in the foreign jurisdiction.

The magistrate found the statute of limitations was properly suspended pursuant to 18 U.S.C. § 3292 and the Indictment was timely filed. Filing No. 58, F&R at 6. He found that the Beekhuizen Declaration and attached letters demonstrated by a preponderance of the evidence that official requests for documents had been made and that evidence was located in foreign jurisdictions. *Id.* at 3. Further, he stated that is not

---

[1] The exhibits admitted at the hearing contain considerably more detail than those presented to the magistrate judge in support of the application, but that is of no consequence to this discussion because, as discussed *infra*, the submission to the magistrate judge satisfied the preponderance of evidence standard.

4

necessary for the government to specifically identify each offense being investigated when applying for suspension of the statute of limitations. *Id.* at 4. The magistrate judge also stated that § 3292 does not require that the government provide notice to a potential defendant when it seeks an application to suspend the statute of limitations, nor does it require that prosecution of an offense be dependent on the evidence sought from the foreign jurisdiction. *Id.* at 5-6.

Defendant Welke objects to the F&R. He challenges the magistrate judge's finding that the statute of limitations was tolled under § 3292. He first contends the magistrate judge applied the wrong standard of proof in reviewing the § 3292 application. Further, he argues that the magistrate judge incorrectly concluded that the government need not specify every offense being investigated when invoking § 3292. The defendant also contends the magistrate judge incorrectly found that the prosecution of an offense does not have to be dependent on evidence sought from the foreign jurisdiction.

He argues that, since the statute of limitations was not properly tolled, the five-year statute of limitations had expired with respect to defendant Welke by the time the indictment was filed. That contention is based on the argument that the only two alleged overt acts that occurred within the five-year period prior to the filing of the complaint on April 16, 2013—a request by defendant Kratville to a friend in late 2008 regarding account signature cards and Kratville's subsequent email on December 29, 2008—were not acts in furtherance of the conspiracy. Also, he argues that his 2007 resignation letter was an affirmative disavowal of the conspiracy.

5

Defendant Welke also contends that the magistrate judge failed to consider that the statutory provision at issue purports to transfer or delegate Congressional authority to enact legislation to the judicial branch of government.[2] He argues that "Congress cannot delegate the judiciary the decision to extend, or refrain from extending, the statute of limitations for an individual citizen." See Filing No. 59, Objection at 14-15.

## II. LAW

Under 28 U.S.C. § 636(b), the court has conducted a de novo review. *United States v. Lothridge*, 324 F.3d 599, 601 (8th Cir. 2003). For statute of limitations analysis, the government must "prove that the conspiracy . . . was still in existence . . . and that at least one overt act in furtherance of the conspiracy was performed . . ." within the limitations period. *Grunewald v. United States*, 353 US 391, 396 (1957).[3] For mail fraud, the relevant date is the date of the mailing. *United States v. Pemberton*, 121 F3d 1157, 1163 (8th Cir. 1997).

"Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence," and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. *Smith v. United States*, 133 S. Ct. 714, 719 (2013) (citations omitted) (quoting *Hyde v. United States*, 225 U.S. 347, 369 (1912)). "Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he

---

[2] Defendant Welke did not raise that issue in the brief submitted to the magistrate judge, though it was alluded to in argument at the hearing. See Filing No. 29, Brief; Filing No. 47, Tr. at 54, 64, 68, 74, 81. Because the court's review is de novo, the court will consider the issue.

[3] As applied to this case, where the conspiracy indictment was returned on April 16, 2013, it is incumbent on the government to prove that the conspiracy was still in existence on April 16, 2008, and that at least one overt act in furtherance of conspiracy was performed after that date. See 18 U.S.C. §§ 371, 3282(a).

6

remains guilty of conspiracy." *Id.* Commission of the crime within the statute-of-limitations period is not an element of the conspiracy offense. *Id.* The government need not allege the time of the offense in the indictment, and it is up to the defendant to raise the limitations defense. *Id.* at 720 (explaining that "[a] statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution."). "Thus, although union of withdrawal with a statute-of-limitations defense can free the defendant of criminal liability, it does not place upon the prosecution a constitutional responsibility to prove that he did not withdraw." *Id.* (stating that "[a]s with other affirmative defenses, the burden is on [the defendant].")

The government must prove the time of the conspiracy offense if a statute-of-limitations defense is raised. *Id.* at 721. However, it is an established proposition that "a defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely inactive after joining it." *Id.* (noting, however, "as a practical matter, the only way the Government would be able to establish a failure to withdraw would be to show active participation in the conspiracy during the limitations period."). The Supreme Court explains:

> Having joined forces to achieve collectively more evil than he could accomplish alone, [the defendant] tied his fate to that of the group. His individual change of heart (assuming it occurred) could not put the conspiracy genie back in the bottle. We punish him for the havoc wreaked by the unlawful scheme, whether or not he remained actively involved. It is his withdrawal that must be active, and it [is] his burden to show that.

*Id.* With respect to a conspiracy offense, the United States must prove at least one overt act that occurred within the statute of limitations. *United States v. Dolan*, 120 F.3d 856, 864 (8th Cir. 1997).

Under 18 U.S.C. § 3292, the suspension of a statute of limitations pending an official request for evidence to a foreign country is permitted under certain circumstances.  18 U.S.C. § 3292(a).  The statute provides:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1).  The statute also provides that such a suspension may not extend beyond the time the foreign country takes final action, or, in any event, may not extend the statute for more than three years from the filing of the official request.  18 U.S.C. § 3292(b) & (c).

Before suspending the running of the statute of limitations, the district court must find by a preponderance of the evidence that (1) an official request has been made for the evidence and (2) it reasonably appears or appeared at the time the request was made that the evidence of the crime is or was in a foreign country.  *United States v. Jenkins*, 633 F.3d 788, 797 (9th Cir. 2011); 18 U.S.C. § 3292(a)(1).  "[T]he government has some burden to establish, as opposed to being able to merely assert without support, that the foreign evidence it seeks meets the section's requirements."  *Id.* at 798.  A § 3292 application "must be supported by materials that 'include or [are] accompanied by some indicia of reliability.'"  *Id.* (quoting *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004)).  Because § 3292 extends the limitations period (itself designed to ensure the reliability of evidence) and an application under § 3292 is made

8

*ex parte*, the government must meet a "minimum evidentiary burden." *Trainor*, 633 F.3d at 1332.

The § 3292 preponderance standard is quite broad. *Jenkins*, 633 F.3d at 798; *Trainor*, 376 F.3d at 1332-33. "The government can satisfy its burden of proof under § 3292(a)(1) 'by including a sworn or verified application containing the necessary factual information, testimony by Government officials, affidavits, declarations, exhibits, or other materials of evidentiary value,' even including hearsay evidence." *Jenkins*, 633 F.3d at 798 (quoting *Trainor*, 376 F.3d at 1333). However, a "mere summarization of the evidence in the Government's possession . . . standing alone," will not satisfy the government's burden. *Id.* at 1333; *see also United States v. Wilson*, 322 F.3d 353, 363 (5th Cir. 2003) (holding that the government did not meet its § 3292(a)(1) burden when it presented "circumstantial evidence of questionable origin" and the testimony of a witness "wholly without personal knowledge" of the issues). When the government moves to suspend the statute of limitations under § 3292, "it must present something with evidentiary value tending to prove that it is reasonably likely that evidence of the charged offenses is in a foreign country—not merely unsupported assertions." *Jenkins*, 633 F.3d at 798; *see Trainor*, 376 F.3d at 1332-34; *see also United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004) (stating that district courts should not "simply rubber-stamp the government's request" but should "hold the government to its burden.").

The offenses designated in the application must be reasonably specific enough to elicit evidence probative of the offenses under investigation. *United States v. Swartzendruber*, 2009 WL 485144, *5 (D.N.D. Feb. 25, 2009) (quoting *United States v.*

9

*Neill*, 952 F. Supp. 831, 832-33 (D.D.C. Nov. 26, 1996)); *United States v. Ratti*, 365 F. Supp. 2d 649, 656 (D. Md. Feb.1, 2005). To require the United States to be omniscient of every possible crime before records are requested and the investigation is complete would be an overly formalistic reading of the statute. See *Swartzendruber*, 2009 WL 485144 at *5 (finding that tax fraud is intimately related to the wire fraud, money laundering, and conspiracy to commit money laundering offenses that were under investigation and listed in the application and tolling order).

The power to define crimes and fix the punishment therefor is legislative in character and may not be delegated to the courts. See *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 88 (1921). The Constitution grants Congress the power to define federal crimes, fix sentences, and regulate the procedure of federal courts. See U.S. Const. Art. I, § 1; *Mistretta v. United States*, 488 U.S. 361, 364 (1989). However, "the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches." *Id.* at 372. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* at 655 (quoting *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409 (1928)).

### III. DISCUSSION

The court has reviewed the record, including the transcript of the hearing and the exhibits. For the reasons set forth below, the court finds defendant's objections to the magistrate judge's findings and recommendation should be overruled and the motion to dismiss should be denied. The court finds that a preponderance of evidence supported

the government's application and the statute of limitations was properly suspended under 18 U.S.C. § 3292(a).  The court agrees with the magistrate judge's conclusion that the government made a proper showing that an official request was made and it was for evidence that reasonably appeared to be in the country to which the request was made.  The government's request can be reasonably understood to include evidence probative of mail and wire fraud as well as money laundering.  The government presented more than unsupported allegations to the to the district court in support of its application.  The sworn declaration of Postal Inspector Beekhuizen sufficiently outlined the investigation and referred to the targets of the investigation.  A sworn declaration has evidentiary value.  Inspector Beekhuizen's sworn attestation that funds had been wired to accounts in foreign countries tended to prove it was reasonably likely that evidence of the alleged fraud and money laundering offenses would be found there.  The court agrees with the magistrate judge that a reasonable fact-finder would conclude that evidence of an investment fraud scheme existed abroad and could be traced to offshore bank and investment accounts.

Further, the court agrees the magistrate judge correctly found that the description of the scheme to defraud contained in the Application and Declaration, along with the nature of the documents requested in the foreign jurisdictions, was sufficiently specific. It suggested that wire and mail fraud were being investigated and the evidence sought was related to the scheme to defraud investors.  Mail and wire fraud and money laundering are intimately connected.

With respect to improper delegation of legislative power, the court finds the defendant's arguments are misplaced.  The tolling statute does not represent an

improper delegation to the courts.  Just as Congress was empowered to define the crime, including the statute of limitations, it was empowered to provide for tolling of the statute of limitations.  The statute clearly sets out the requirements the prosecutor must meet for the district court to be authorized to apply § 3292 and suspend the statute of limitations.  Congress legislated an intelligible principle that the court is directed to apply and the legislative act is not a forbidden delegation.  The judicial finding required in connection with a § 3292 application—determining the quantum of evidence—is the type of decision courts are authorized and qualified to make.

The court further finds, however, that even if the statute of limitations were not properly suspended under § 3292, the defendant could not prevail on his motion to dismiss.  Defendant's statute of limitations argument is premised on the contention that he had withdrawn from the conspiracy before April 2008 (more than five years prior to the filing of the indictment) or, alternatively, that no overt acts after April 2008 were taken in furtherance of the conspiracy.  Both of those contentions involve facts and proof beyond the purview of a motion to dismiss.  On its face, the indictment alleges only that defendants Kratville and Welke "purportedly resigned from Elite," but backdated the resignation letters to create the appearance that they had nothing to do with Elite from then on.  Filing No. 1, Indictment at 11.  The indictment charges that they in fact remained active in the management and control of NIC, Elite's successor entity from 2006 forward.  *Id.*  The backdating of the letters is characterized as a "ploy to distance themselves from further participation in the scheme."  *Id.*  A purported resignation from an entity that serves as a vehicle for a fraudulent investment scheme does not necessarily equate with a withdrawal from the conspiracy.  Under Supreme

12

Court precedent, the burden is on the defendant to prove the affirmative defense of withdrawal and he will have an opportunity to do so at trial. Accordingly, the court finds the F&R of the magistrate judge should be adopted.

IT IS ORDERED:

1. Defendant Welke's objection (Filing No. 59) to the F&R (Filing No. 58) is overruled.

2. The F&R (Filing No. 58) is adopted in its entirety.

3. Defendant Michael Welke's motion to dismiss the indictment (Filing No. 28) is denied.

DATED this 7th day of November, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge